Filed 4/19/22  P. v. Raynoha CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ANTHONY RAYNOHA,<br><br>    Defendant and Appellant. | D078748<br><br><br><br>(Super. Ct. No. SCD173300) |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Reversed and remanded with directions.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

In 2005, David Raynoha entered into a plea agreement in which he agreed to testify against his codefendants.  In return for his cooperation,

Raynoha was allowed to plead guilty to second degree murder (Pen. Code,[1] § 187, subd. (a)). The remaining charges and allegations were dismissed, and the parties agreed to a sentence of 15 years to life. Because of the nature of the plea agreement, Raynoha was required to testify to the details of the crime as the factual basis of the plea.

Raynoha was sentenced in accordance with the plea agreement.

In 2020, Raynoha filed a petition for resentencing under section 1170.95. The trial court appointed counsel, received briefing, and reviewed the record of conviction. The court denied the petition by written order without first issuing an order to show cause (OSC) and holding an evidentiary hearing. The court determined the record of conviction showed Raynoha acted with reckless indifference to human life and thus his petition did not state a prima facie case for resentencing under section 1170.95.

Raynoha filed a timely notice of appeal.

Raynoha contends and the Attorney General agrees that the court erred in finding Raynoha ineligible for relief as a matter of law at the prima facie stage of review. Essentially, the parties agree the trial court engaged in evidentiary weighing of the evidence in the record of conviction.

After reviewing the record, we conclude the trial court engaged in impermissible factfinding at the prima facie stage of review. Accordingly, we will accept the Attorney General's concession and remand the case for an evidentiary hearing.

## STATEMENT OF FACTS

The change of plea contains the admissions made by Raynoha, which served as the factual basis for the plea. Respondent has accurately

---

[1] All further statutory references are to the Penal Code.

2

summarized the facts from that testimony. We will incorporate that summary here.

The oral factual basis for Raynoha's guilty plea[2] was as follows:

Raynoha planned with James Torkelson, Max Anderson, and Jeffrey Young to commit a robbery at the Five Star Shuttle & Fly. On the evening of July 17, 1999, Anderson drove his truck with Raynoha, Torkelson, and Young riding as passengers to conduct reconnaissance and execute the robbery.

On the morning of July 18, 1999, Raynoha was armed with a 9-millimeter gun to commit the robbery. Anderson had two 9-millimeter guns and Young a .38 caliber weapon. The three men followed Torkelson and met at the parking lot. Raynoha, Anderson, and Young laid down in the back of Torkelson's Toyota 4-Runner as Torkelson drove into the parking lot.

As instructed by Torkelson, Raynoha was armed as he encountered the security guard and took him down to the ground while Anderson and Young entered the office trailer to take money from the safe. Anderson and Young ordered the persons inside the trailer to get down on the ground. Teresa P. came out of the bathroom; Raynoha intercepted her and sent her into the office trailer. When Teresa opened the door, Raynoha saw Anderson in the far room and Young standing by the door. Young got Teresa down on the floor, the door closed, and Raynoha heard gunshots fired. Raynoha later learned that Young shot Teresa and Anderson shot a male victim.[3]

Raynoha was outside holding the security guard on the ground when the shootings occurred. Raynoha saw a van driving in the parking lot, and he

---

[2]   The plea form is not contained in the record.

[3]   Teresa was the murder victim in count 1, and Jack R. the murder victim in count 2.

3

hid behind a booth. Young and Anderson exited the trailer, saw the van, and started shooting at it. Raynoha went around the booth and began shooting at the van.

After the van drove away, Raynoha, Anderson, and Young ran towards a parked car that Torkelson had told them was supposed to belong to the man in the trailer who always parked in that space. Anderson went to the driver's side door, and Young to the left rear door to try to enter the car. Raynoha became impatient, shot the front passenger window, opened the door, and unlocked the doors for the others to enter. The keys they took from the man did not work, so everybody got out of the car and started running.

Young was in the lead, followed by Anderson, and then Raynoha. Anderson yelled that he dropped his gun. Raynoha stopped and returned to retrieve the gun. He then fired three rounds over the trailer to make sure that any persons inside the trailer would stay down and not use the telephone.

Raynoha held the gun he picked up as he continued to run. He caught up to Anderson and gave him the gun. As they crossed the street, Raynoha saw headlights and he ran towards the driver's side of the car. Raynoha saw a man standing at the back of the car. Raynoha lifted his gun and told the man to get away from the car. The man turned around and said, "Take it." Raynoha entered the driver's side and he saw another man standing nearby. Anderson stood by the passenger's side of the car, aimed his gun at one of the men, and told Raynoha to open the door. Raynoha opened the passenger door, and Anderson entered the car. "Basically, [Raynoha] carjacked whose ever car it was."

Raynoha drove the car up a hill where Young was running on the center of the road. Raynoha stopped the car, and Young turned around and

4

entered in the backseat area of the car. Raynoha drove the car towards the area where Torkelson's truck was parked as the get-away vehicle.

After reaching Torkelson's truck, Raynoha, Anderson, and Young entered the truck, and they drove away from the scene. They drove the truck and parked it outside of Torkelson's home in the Tierrasanta area of San Diego where they split the money. They put Torkelson's share inside a box and left it at the front yard of the residence.

## DISCUSSION

The Supreme Court has clarified the role of trial judges in reviewing petitions under section 1170.95. The court held that after appointment of counsel, trial courts may dismiss such petitions at the prima facie stage when the record establishes, as a matter of law, that the petitioner is ineligible for relief. While the court may review the record of conviction, it cannot engage in factfinding or the weighing of evidentiary material. (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980). The court may utilize readily available facts from the record, but it may not draw evidentiary inferences from the record.

Here, the trial court concluded the record demonstrated Raynoha acted with reckless disregard for human life, a conclusion the court drew from its assessment of the factual record. Such evidentiary weighing and factfinding must wait for an appropriate evidentiary hearing.[4]

## DISPOSITION

The order denying Raynoha's petition for resentencing under section 1170.95 is reversed. The case is remanded to the superior court with

---

[4]    It is certainly possible that a factfinder at an appropriate hearing might find Raynoha acted with reckless indifference to human life. However, such finding was not appropriate prior to an OSC and proper evidentiary hearing.

directions to issue an order to show cause and to hold an evidentiary hearing as required by statute.

HUFFMAN, Acting P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.